UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MICHAEL SINICOLA,

     Plaintiff,

v.                                                                          Case No. 26-cv-334-TPB-NHA

AMICA MUTUAL INSURANCE
COMPANY,

     Defendant.

_____/

### ORDER DENYING "PLAINTIFF'S MOTION TO REMAND AND SUPPORTING MEMORANDUM OF LAW"

This matter is before the Court on "Plaintiff's Motion to Remand and Supporting Memorandum of Law," filed on March 4, 2026. (Doc. 13). Defendant Amica Mutual Insurance Company filed a response in opposition on March 4, 2026. (Doc. 15). After reviewing the motion, response, court file, and the record, the Court finds as follows:

### Background

This case arises from a hit-and-run car accident near I-75 South and East Hillsborough Avenue in Hillsborough County, Florida. Plaintiff Michael Sinicola alleges he was injured on December 5, 2023, during a rear-end car accident by an underinsured motorist. Plaintiff had an uninsured/underinsured policy with Defendant at the time of the incident. On June 24, 2025, prior to the filing of any litigation, Plaintiff sent Defendant a demand letter that included Plaintiff's identifying information, Plaintiff's position on liability, photographs of property

Page 1 of 5

damage to his vehicle, and information on his claimed injuries and medical treatment, including visit summaries with different providers and medical diagnoses.[1]  The demand letter further detailed that Plaintiff had incurred $20,215.00 in past medical expenses and was expected to incur **$227,632.00** in future medical expenses.  The letter stated that Plaintiff would be unable to contribute household services, giving rise to an additional estimated loss of $56,584.33, and that he would incur pain and suffering of an estimated **$462,528.00**.[2]  In total, the letter claimed Plaintiff suffered **$766,959.33** in damages and demanded that Defendant pay its full policy limits of $100,000 to settle the claim.[3]  On July 22, 2025, Plaintiff also filed a Civil Remedy Notice of Insurer Violations pursuant to § 624.155, *F.S.*, alleging that Defendant had not attempted in good faith to settle the claim and noting that Defendant's violations could be cured by paying the $100,000 policy limit within 60 days after the filing of the notice.

On November 22, 2025, Plaintiff filed a complaint in the Circuit Court of the Thirteenth Judicial Circuit in and for Hillsborough County, Florida.  The complaint

---

[1] Based on the demand letter, Plaintiff's injuries and diagnoses include, but are not limited to: post-traumatic headaches, acute pain, arthropathy, cervical disc displacement in an unspecified cervical region, intervertebral disc displacement in the lumbar region, radiculopathy in the cervical and lumbar regions, muscle spasms, myalgia, ligament sprains, and muscle strains.  (Doc. 15-1, at 6).

[2] The demand letter bases the pain and suffering figure on: (1) comparable jury verdict awards for pain and suffering in the state of Florida, (2) initial pain and suffering, and (3) subsequent pain and suffering, taking into account Plaintiff's estimated additional life expectancy of 38.32 years.  (Doc. 15-1, at 17-18).

[3] *See* (Doc. 15-1, at 19) ("This claim could and should be settled for $100,000.  This offer of settlement will remain open for thirty (30) days from the date of this letter.").

alleges he suffered "bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, medical, nursing, and hospitalization expenses, medical and nursing care and treatment, loss of earnings, and loss of the ability to earn money," and that these losses "are either permanent in nature or continuing and Plaintiff will suffer losses in the future."  While the state court complaint did not expressly allege that the amount in controversy exceeded the $75,000 jurisdictional minimum required for federal court, the complaint did allege that Plaintiff "requested the benefits to which [he] [is] entitled to" under the plan – which neither party disputes is $100,000 – and that Defendant had failed to make that payment.  Defendant removed the case to this Court on February 6, 2026.

## Analysis

When the amount in controversy supporting diversity jurisdiction is challenged, "the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 82 (2014).  The Court may make reasonable inferences and deductions to determine whether the amount in controversy exceeds $75,000 in a particular case.  *See Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 754 (11th Cir. 2010); *see also Roe v. Michelin N.A., Inc.*, 613 F.3d 1058, 1063 (11th Cir. 2010) (explaining that a district court may "employ[] its judicial experience or common sense in discerning whether the allegations in a complaint facially establish the jurisdictionally required amount in controversy").

Plaintiff's complaint seeks the policy limits of $100,000, he filed a Civil Remedy Notice seeking the $100,000 policy limit, which he later reduced to $90,000, and he sent a pre-suit demand letter with detailed information supporting at least $766,959.33 in economic and noneconomic damages.  The Court concludes from the foregoing evidence that the amount in controversy is met.  *See, e.g., Vega v. GEICO Gen. Ins. Co.*, No. 8:21-cv-1450-MSS-AAS, 2021 WL 11132744, at *2-3 (M.D. Fla. Aug. 3, 2021) (denying a motion to remand based on demand letters supporting $18,000 in past medical bills, an estimated $44,900 in future medical bills, the need for additional and ongoing care, and various noneconomic damages); *Sabol v. USAA Cas. Ins. Co.*, No. 5:16-cv-679-Oc-30PRL, 2016 WL 7338538, at *2 (M.D. Fla. Dec. 16, 2016) (denying a motion to remand based on a demand letter supporting $32,516.21 in past medical bills, the complaint's allegations that the plaintiff would "incur additional medical expenses," the plaintiff's pre-suit demand of $300,000, and various noneconomic damages); *Poltar v. LM Gen. Ins. Co.*, 473 F. Supp. 3d 1341, 1346 (M.D. Fla. 2020) (explaining that a district court may consider "pain and suffering due to the allegedly permanent injuries, mental anguish, and the loss of the capacity for the enjoyment of life" in determining the amount in controversy).

Plaintiff now calls his own demand letter "puffing and posturing."  The Court declines to disregard the detailed information in Plaintiff's demand letter based on Plaintiff's after-the-fact characterization, and Plaintiff offers no authority requiring the Court to do so.   Demand letters are not dispositive, but they are relevant and may be considered as evidence of the amount in controversy.  *See, e.g., Burns v.*

*Windsor Ins. Co.*, 31 F.3d 1092, 1097 (11th Cir. 1994); *see also Sturn v. State Farm Mut. Auto. Ins. Co.*, No. 6:16-cv-1293-Orl-41GJK, 2016 WL 8469499, at *1 (M.D. Fla. Nov. 22, 2016), *report and recommendation adopted*, 2017 WL 960752 (M.D. Fla. Mar. 13, 2017) (rejecting the plaintiff's argument that her own demand letter was a mere "form demand" and "non-specific puffery"); *Mick v. De Vilbiss Air Power Co.*, No. 6:10-cv-1390-Orl-28GJK, 2010 WL 5140849, at *2 (M.D. Fla. Dec. 14, 2010) (rejecting the plaintiff's argument that his demand letter was merely posturing when it contained sufficient facts to evaluate the amount of the demand).

In closing, it should be noted that an effective way to avoid removal might be to refrain from sending a demand letter claiming over three quarters of a million dollars in damages.[4]

Accordingly it is therefore

**ORDERED**, **ADJUDGED**, and **DECREED**:

1.    "Plaintiff's Motion to Remand and Supporting Memorandum of Law" (Doc. 13) is hereby **DENIED**.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 24th day of March, 2026.

TOM BARBER
UNITED STATES DISTRICT JUDGE

---

[4] The Court notes that it has seen more than a few demand letters claiming damages in the amount of **$74,999**.